Davis A. **HERNDON**

v.

**SUPERINTENDENT, VIRGINIA STATE FARM.**

**Civ. A. No. 208–71–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Dec. 13, 1972.

Henry M. Taylor, Jr., Richmond, Va., for plaintiff.

Vann H. Lefcoe, Asst. Atty. Gen. of Virginia, Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

This case presents the issue of whether a misdemeanant, convicted without benefit of counsel in violation of his Sixth Amendment rights, may in a habeas action recover from the State fines levied in punishment for said conviction.

David Herndon brings this action, alleging jurisdiction under 28 U.S.C. § 2254, to redress allegedly illegal misdemeanor convictions for discharging a firearm in public, driving with a revoked license, and driving under the influence of intoxicants, in the Orange County Court of October 5, 1970. The petition was filed *pro se*, on March 19, 1971, and an amended petition was filed on March 31, 1971. The ground originally asserted therein was that petition-

er was denied appointment of counsel for trial of the above recited state charges.

The respondent has admitted this allegation, there being at that time no provision in the Virginia state courts for counsel for indigents in misdemeanor cases.

On April 5, 1971, Herndon paid his fine and was released from custody. The respondent has subsequently moved to dismiss and petitioner, by appointed counsel, has cross motioned for summary judgment. Counsel have submitted memoranda on the issues raised, and it is upon same and the pleadings before it that the Court finds this matter ripe for disposition.

In view of the Virginia Supreme Court's decision in Potts v. Superintendent of the Virginia Penitentiary (also known as Potts v. Slayton), 192 S.E.2d 780 (1972), discussed *infra*, State relief is foreclosed to the petitioner who is thereby relieved from the necessity to pursue State remedy. 28 U.S.C. § 2254 (b). Accordingly, this action is ready for determination on the merits.

■ The threshold question before the Court is whether the petition is moot by virtue of Herndon's release *from custody and payment of fine.* The Court determines that as a matter of law it is not, the petitioner having commenced this action prior to his release. Carafas v. LaVallee, 391 U.S. 234, 88 S. Ct. 1556, 20 L.Ed.2d 554 (1968).

■ The second issue is whether Herndon may attack his conviction on the ground that he was not afforded counsel. On March 10, 1971, subsequent to Herndon's conviction, this Court decided Marston v. Oliver, 324 F.Supp. 671 (E.D.Va.1971), wherein the Court ruled that the denial of appointed counsel to an accused indigent misdemeanant who requested same rendered the conviction therein constitutionally defective. Subsequently, in June 1972, the Supreme Court reached the same result in Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). On No-

vember 7, 1972, the Court of Appeals for the Fourth Circuit affirmed *Marston,* No. 71–1329, mem. decis., on the basis that *Argersinger* applies retroactively and thus supports this Court's original determination. This Court reaffirmed retroactive application of *Marston* and *Argersinger* in Cordle v. Woody, No. 380–71–R, 350 F.Supp. 479 (1972) and Wesson v. Farmer, No. 224–72–R (November 10, 1972).

The respondent herein has asked this Court to reconsider its holdings in *Cordle* and *Wesson* on two grounds: first, the Virginia Supreme Court has, subsequent to those cases, determined that *Argersinger* is *not* retroactive in Potts v. Slayton, *supra;* second, the Court of Appeals' affirmance of *Marston* relied on by this Court was promulgated in a memorandum decision of the Court and thus carries little precedential weight.

The latter contention gains some support from the Court of Appeals' own language in Jones v. Superintendent, 465 F.2d 1091 (4th Cir. 1972), wherein the Court stated: "[W]e think it reasonable to refuse to treat them [memo. decisions] as precedent within the meaning of the rule of stare decisis." Nevertheless, this Court is duty bound to follow the rules enunciated by its appellate court. Absent contrary holdings in the Court of Appeals' published decisions, this Court will continue to give the appropriate weight to the memorandum decisions of the Court of Appeals, regardless of form. To do otherwise would place the Court in the untenable position of looking to the format of the decision rather than to the ultimate fact that the decision is signed by three learned judges of the Court.

Be that as it may, the Court here reaffirms its conclusions of law in *Cordle* and *Wesson* and its belief in the correctness of the rules of law enunciated therein and in the Fourth Circuit Court of Appeals' affirmance of *Marston, supra.*

Respondent's other contention is that this issue should be redetermined in light of Potts v. Slayton, *supra,* wherein the Virginia Supreme Court reached a contrary result finding *Argersinger* not retroactive. Although this Court maintains the highest regard for the learned justices of the Virginia Supreme Court, and a continuing belief in the value of judicial comity, it would nevertheless be a perversion of the comity doctrine to reach a result contrary to law as the Court concludes it to be for purposes of accommodation. The resulting "split" within the Circuit, though unfortunate, is not without precedent. See Kemplen v. Maryland, 428 F.2d 169 (4th Cir. 1970).

Accordingly, the Court concludes that Herndon may seek relief under the aforementioned rulings of this Court and the Court of Appeals for the Fourth Circuit; and further, concludes that the convictions complained of are null and void.

The remaining issue, which is the substantial question involved here, concerns the nature of the relief sought. With respect to the time served, the matter is moot, Herndon having been released from custody. Though not enunciating it clearly, Herndon's counsel has on motion for summary judgment alluded to the issue of expunction. Counsel not having fully briefed that question, it is properly a matter for another action and not appropriate here. See Kimbrough v. Duke, No. 543–71–R, mem. decis. (E.D. Va.1972).

■ The issue remains, therefore, whether habeas corpus relief can be applied for the return of fines levied and collected by virtue of an unlawful conviction. The Court concludes that it cannot.

In *Argersinger,* Mr. Justice Douglas, for the majority, noted specifically that the rule there enunciated applied only to cases in which the accused faced the possibility of a jail sentence. The Court specifically declined to reach the question of whether the same rule applied to accused who were liable upon conviction only to criminal fines. The logical diffi-

culty, however, in fashioning an appointment of counsel rule on the basis of the *nature* of punishment faced by the accused is well treated in Mr. Justice Powell's learned concurrence to *Argersinger*, wherein it is suggested that a liberty-property distinction is untenable and that the appointment of counsel determination should be made on a case by case basis.

Nevertheless, the issue presented here is somewhat different. Herndon's conviction is, under the law already enunciated, illegal. Restated, the issue is thus whether said illegality gives rise to relief directing the return of fines paid. Two questions are raised thereby: first, whether a habeas corpus action is the correct vehicle by which to pursue said relief; second, assuming jurisdiction is met, whether that relief is mandated by the law.

In *Carafas, supra,* the Supreme Court stated:

> But the [habeas corpus] statute does not limit the relief that may be granted to discharge of the applicant from physical custody. Its mandate is broad with respect to the relief that may be granted. It provides that "[t]he court shall . . . dispose of the matter as law and justice require." 28 U.S.C. § 2243. The 1966 amendments to the habeas corpus statute seem specifically to contemplate the possibility of relief other than immediate release from physical custody. At one point, the new § 2244(b) (1964 ed., Supp. II), speaks in terms of "release from custody or other remedy."

The Court construes this language to be a mandate to fashion under habeas corpus jurisdiction such relief as deemed appropriate, which includes here, the authority, if warranted, under the statute, to grant relief with respect to the illegally levied fines.

A further consideration guides the Court to this result. The Court entertains little doubt that an action for return of fines may be appropriate under 42 U.S.C. § 1983, and 28 U.S.C. § 1343. See Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), holding that § 1983 may be invoked to redress wrongful taking of property under color of state law. An inherent difficulty, however, of suing *de novo* under § 1983 for return of fines without first attacking the conviction on habeas corpus exists, because absent the habeas corpus relief there is no showing of "deprivation of any rights, privileges, or immunities secured by the Constitution" under color of State law. Accordingly, under a § 1983 theory of relief a claimant seeking this relief must necessarily litigate the great writ and then proceed for return of fines. The result is clearly duplicative.

Another alternative view of this jurisdictional problem is to treat a suit of this nature as arising both under the habeas corpus statute and § 1983, precedent for which may be found in Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971). See also Wimmer v. Brown, No. 103–72–R, mem. decis. (E.D.Va. 1972). The Court, in any case, concludes that Herndon may pursue the relief here.

Having determined that the Court has jurisdiction over this matter does not, however, answer the question as to whether the Court has the power to grant the relief. Upon considering the matter, the Court finds that it does not.[1]

██ In essence, the cause of action stated here by which Herndon seeks recovery of his fines constitutes a suit for recovery of money against the State of Virginia. Such an action does not lie against the State under § 1983, the State not being a "person" within the meaning of that statute. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Moreover, under any other theory advanced herein, the Court concludes that civil recovery is foreclosed against the State by the Eleventh

1. The Court being unaware of any case authority on point, this issue is one of first impression.

Amendment, absent the State's consent to be sued therefor. There is no evidence, unsurprisingly, of the State's explicit consent with respect to this matter. *Implicit* consent to be sued, while deemed given in specific instances, see, *e. g.*, Maryland v. Wirtz, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), is the rare exception to the rule. The State's conduct complained of here does not fall within any of the recognized exceptions and accordingly does not give rise to implied waiver of immunity.

■ It is arguable that Herndon's effort to recover his fines is analogous to a criminal accused's attempt to recover property illegally seized in violation of the Fourth Amendment. The Court has considered this contention and concludes that it does not properly reconcile a distinction between the two instances.

In search and seizure cases, the defendant is in essence suing a State custodian for return of property illegally seized, to which property the accused effectively retains title. This type prayer for relief is addressed to a State official in his capacity as a functionary of the State, who has allegedly acted without authority of law, and is not addressed to the State or agency thereof itself. Such a suit is proper and not barred by the Eleventh Amendment. See Worcester County Trust Co. v. Riley, 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed. 268 (1937).

■ In the present matter, the property sought has already vested in the State, the convictions herein being finalized under State process. There is no issue of custody. Relief rather may be attained only by directing payment from the State treasury.[2] Were this a state appellate court, the result might be different, the recovery being sought on direct rather than collateral review. It is well settled, however, that a federal court entertaining habeas corpus jurisdiction is not an appellate court.

2. See Hergenreter v. Hayden, 295 F.Supp. 251 (D.Kansas 1968), holding that the 11th Amendment bars suit against a state

Accordingly, Herndon's motion for summary judgment will be granted with respect to the legality of his misdemeanor convictions. Said convictions are null and void. Summary judgment will be denied for petitioner and granted to respondent on the issue of return of fines.

for restitution of alleged wrongfully withheld funds under a state school grant program.